UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| **DANIN THOMAS**, an individual, | ) | | |
| | ) | | |
| *Plaintiff*, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. | 19-CV-4045 |
| | ) | | |
| **SEAL-RITE DOOR, INC.**, | ) | District Judge | _____ |
| | ) | | |
| *Defendant.* | ) | Magistrate Judge | _____ |

## COMPLAINT

NOW COMES Plaintiff, DANIN THOMAS ("Thomas" or the "Employee), by and through his attorneys of the law firm COLE SADKIN, LLC, and for his Complaint against Defendant, SEAL-RITE DOOR, INC., ("Seal-Rite" or the "Company"), an Illinois for-profit corporation doing business in Illinois:

### NATURE OF THE ACTION

1. The present action is brought by Danin Thomas against his prior employer, Seal-Rite Door, Inc. Thomas alleges a variety of employment discrimination and resulting retaliation against the Defendant, and he seeks compensatory and punitive damages, and injunctive relief resulting therefrom.

2. Thomas was terminated on or about December 12, 2018 (the "Termination Date"), in retaliation for complaining about alleged discrimination, and he has not found suitable similar employment despite making reasonable efforts to mitigate his damages.

1

## JURISDICTION AND VENUE

3. This suit is brought to secure the protection of, and to redress the deprivation of, rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Title VII").

4. There is no other civil action between these parties arising out of the same transaction or occurrence as alleged herein pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

5. Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3), 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1988, and 42 U.S.C. § 12117.

6. Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b).

7. Plaintiff, Danin Thomas, has met all administrative prerequisites to suit in that he filed a timely charge of discrimination against Seal-Rite Door, Inc., with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 440-2019-01651, a copy of which is attached hereto and made a part of Plaintiff's **Exhibit 1.** Plaintiff received a Right-to-Sue letter on or about March 21, 2019, a copy of which is attached hereto and made a part of Plaintiff's **Exhibit 2.** Plaintiff brings this action within the limitations periods of 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 2000 *et seq*.

**PARTIES**

8. Plaintiff is an African-American male and a citizen of the United States, and he resides in Illinois. He was employed by Seal-Rite Door, Inc., as a Prefinish Technician from September 19, 2016 through December 12, 2018.

9. Defendant Seal-Rite Door, Inc. is an Illinois corporation registered to do business within the State of Illinois and is an employer within the definitions 29 U.S.C. § 630(b), and 42 U.S.C. § 2000(e)(b). The Company's registered agent is located at 5960 Falcon Road, Rockford, IL 61109. The principle Illinois business address for the Company is 5960 Falcon Road, Rockford, IL 61109. At all relevant times hereto, Seal-Rite Door, Inc., was, and continues to be, engaged in the business of asphalt maintenance services.

**STATEMENT OF FACTS**

10. On or about September 19, 2016 (the "Employment Date"), Thomas began employment with Seal-Rite, earning a starting wage of eleven dollars ($11.00) per hour. *See* New Employee Information Form, attached hereto as **Exhibit 3**.

11. Thomas observed numerous derogatory statements from management subjecting employees of similar ethnicity and was a frequent target of racial bullying and mockery by numerous Seal-Rite supervisors.

12. On or about August 4, 2017, Thomas was approached by Seal-Rite General Manager, Scott Glass ("Glass"), accompanied by another employee, Bruce Landenburg ("Landenburg"). Glass asked Thomas, "How do you people get your hair like that?" Landenburg stated to Glass that he cannot make similar statements because they qualify as a violation of Human Resources protocol.

13. Glass responded, "Yeah, but he knows what I'm talking about." Thomas interpreted Manager Glass' comment to be derogatory to African-American men. Thomas interpreted Landenburg's comment to reference his knowledge that the Company should not allow said derogatory comments.

14. On or about August 8, 2017, Thomas again observed Manager Glass, accompanied by employee Khalid Pryor ("Pryor"). Glass proffered to Pryor, that he "would not hire [African-American] women because they are too ghetto and loud." Thomas did not confront Glass to inquire about the derogatory comments against African-American women.

15. Thomas interpreted Manager Glass' comment to be derogatory to African-American women. Thomas contacted the Seal-Rite Vice President, Shawn Richard ("Richard"), to request the Company conduct a formal Human Resources investigation. Thomas interpreted Richard's response to reference Glass and Richard's collective knowledge that the Company should not allow said derogatory comments. *See* August 2017 Email Correspondence, attached as **Exhibit 4.**

16. Upon information and belief, no Human Resources investigation was conducted, nor did the Company provide any correspondence or statement for Thomas to review or edit.

17. On or about August 9, 2017, Thomas again observed Manager Glass, in front of multiple Company employees. Glass instructed all Company employees that they are qualified to carry identification to assist the Company to facilitate mandatory random drug testing. Alex (unknown last name) informed Glass that he only had an identification card from Mexico. Glass responded, "Yeah, you're probably illegal." Alex and multiple Company employees responded to Glass that he is not allowed to make such comments.

4

18. Thomas interpreted Manager Glass' comments to be derogatory to Hispanic men. Thomas interpreted Alex' and Company employees' responses to reference their knowledge that the Company should not allow derogatory comments.

<u>Thomas Attempts to Report Company Racial Discrimination</u>

19. On or about August 9, 2017, Thomas requested to his immediate supervisor, Nick Vyborni ("Vyborni"), regarding scheduling a meeting with Seal-Rite managers to discuss the recent derogatory statements. Thomas interpreted his request to Vybroni to specifically have the Company conduct a formal Human Resources investigation. Vybroni responded by acknowledging his request and scheduling a meeting.

20. Upon information and belief, no Human Resources charge was ever filed, nor did the Company provide any correspondence or statement for Thomas to review or edit.

21. On or about August 9, 2017, Thomas respectfully requested Glass to stop making racial discriminatory statements. Glass became defensive, denying his actions and later stated he would not do it again. Thomas interpreted Glass' response to indicate that Glass was and is aware that his statements constituted derogatory comments and that the Company is aware of his comments. Thomas also interpreted Glass' response to indicate that he would not continue making said comments, and that Thomas' employment would not be retaliated against for bringing these concerns to Company attention.

22. On or about August 9, 2017, Thomas filed a charge of discrimination with the EEOC based on Glass' ongoing hostility demonstrated in response to Thomas' request to stop making derogatory comments based upon race.

23. On or about October 9, 2017, Company supervisor John Utley approached Thomas specifically to discuss the status of his October 9, 2017 EEOC Charge. No other employees were present for this conversation. Thomas specifically instructed Utley not to ask him about ongoing racial discrimination claims. Utley responded by saying, "Yeah that's right, you just keep pushing that broom n****r." Thomas interpreted Utley's comments to be derogatory towards African-American men. Thomas also interpreted Utley's comments to be retaliatory in reference to Thomas' filed EEOC Charge.

24. On or about October 9, 2017, Thomas contacted Vyborni and Richard to document the retaliation presented by Utley. Specifically, Richard questioned Utley who admitted to making the derogatory comments to Thomas. Thomas interpreted his conversation with Richard to be a direct request for the Company to conduct a Human Resources investigation. Upon information and belief, Thomas was not provided the results of any Human Resources investigation.

25. Upon information and belief, Utley received a written warning from the Company but no formal suspension.

Thomas Expresses Concern with Company Retaliation

26. On or about October 23, 2017, Thomas contacted Richard to express frustration that Utley was not formally penalized other than a verbal warning. Richard informed Thomas that the Company was not going to escalate the verbal warning. Thomas interpreted Richard's comments to indicate that the Company was not going to further investigate his allegations of racial discrimination. Thomas also interpreted Richard's comments to indicate that the Company was not going to properly prevent a hostile work environment and retaliation regarding the same.

6

27. From October 23, 2017 through January 22, 2018, Thomas intentionally avoided unnecessary interactions with coworkers and supervisors in order to avoid dealing with the hostile work environment and retaliation. During this time period, Thomas received no discipline from the Company of any kind.

Thomas' January 2018 Employment Injury

28. On or about January 22, 2018, Thomas slipped on an oil leak from a compressor, injuring his left shoulder. He immediately notified his supervisor, Vyborni, and was promptly taken to the emergency room by ambulance.

29. On or about January 22, 2018, Thomas met with a physician at Swedish American Hospital who issued him orders to not lift more than twenty (20) pounds. Upon information and belief, Thomas immediately informed Vyborni of his shoulder injury and that he would need to take medical leave. Vyborni responded that the Company would provide one hundred and twenty (120) days of paid leave.[1] Thomas interpreted Vybroni's comments to indicate that the Company would assist Thomas to file for Family Medical Leave Act ("FMLA") benefits and that Thomas would qualify.

30. From January 22, 2018 through May 30, 2018, Thomas was recuperating at home under the impression that the Company was processing his FMLA paperwork. Thomas' impression relied upon Vybroni's comments to him as a Company supervisor.

31. On or about May 30, 2018, the Company's Human Resources Representative Nate Reynolds ("Reynolds"), contacted Thomas to inform him that FMLA documentation had not been filed and stated to him that he needed to return back to work or he would be terminated.

---

[1] Thomas provided the Company with his medical documentation from his January 22, 2018 hospital stay. Vyborni did not request additional information at this time.

Reynolds did not provide any documentation relaying this conversation or request Thomas to provide additional documentation. Thomas interpreted providing his doctor's note as a formal request for disability accommodation and FMLA documentation.

32. On or about May 30, 2018, Thomas notified Vyborni regarding the status of his shoulder injury and provided all necessary medical documentation. Specifically, Thomas' medical instructions restricted him from engaging in strenuous activity of lifting more than twenty (20) pounds when returning to work. Vyborni responded that the Company could accommodate his request and that he should return to work on June 1, 2018. Thomas interpreted Vyborni's acknowledgement as a formal accommodation of his workplace injury and ongoing disability.

33. On or about June 1, 2018, Thomas returned to work with the expectation that the Company will meet his disability accommodation. Vyborni instructed Thomas to immediately begin lifting nearly two hundred (200) pounds of concrete and composite doors. Upon information and belief, this is the most physically demanding position at the Company. Out of fear of receiving further disciplinary action or losing his employment, Thomas complied with the strenuous activity against the orders of his physicians.

34. Upon information and belief, based upon Thomas' medical documentation, Vyborni's June 1, 2018 workplace instructions further exacerbated Thomas' injury and impeded his recovery. Due to Thomas' fear of losing his position, Thomas did not immediately complain to Company supervisors or Human Resource management.

Management Retaliation Against Thomas Upon Returning to Employment

35. On or about June 15, 2018, co-worker Jonathan Diaz informed Thomas that, upon Diaz' hiring, management warned him to "stay clear" of Thomas because he was considered a "trouble maker." Thomas interpreted management's instruction as retaliation of the FMLA request and EEOC Charge filed against the Company.

36. On or about June 20, 2018, Management later observed Diaz and Thomas talking which resulted in Diaz receiving another warning.

37. On or about June 25, 2018, Thomas received documentation indicating that Company supervisor John McCalister was a registered sex offender. Thomas reported this registration to Vyborni. Upon information and belief, Vyborni informed McCallister regarding Thomas' inquiry. Thomas interpreted the Company's response to indicate that it was not willing to prevent retaliation or a hostile work environment. Specifically, Vyborni instructed Thomas to stop discussing the inquiry. As a result, McCalister began issuing Thomas frequent disciplinary actions. Thomas had not previously received any disciplinary actions or negative performance reviews what-so-ever.

38. On or about June 30, 2018, McCalister issued Thomas written discipline for not promptly returning to work within one (1) minute after the sound of the warehouse alarm, signalling the end of break period.

39. On or about July 15, 2018, McCalister issued Thomas written discipline by claiming he was returning from the Company break room without authorization.

40. On or about August 1, 2018, McCalister issued Thomas written discipline by claiming he did not punch out for his scheduled lunch break.

41. On or about August 15, 2018, McCalister issued Thomas written discipline by claiming he took an unauthorized bathroom break without supervisor authorization.

42. From September 2016 through June 2018, Thomas was a stellar employee and received no disciplinary action of any kind from management. Upon information and belief, disciplinary action received from June through August 2018 is pretext for intended termination by the Company against Thomas.

Management Termination of Thomas Without Notice

43. On or about December 11, 2018, Thomas was accused of assaulting Vyborni by shooting an industrial strength staple gun at him.

44. Thomas was called into management's office and was informed he was being terminated, as a result of the accusation.

45. Upon his Termination Date, Thomas filed for unemployment, which Seal-Rite subsequently contested and won.

46. As a result, Thomas appealed the unemployment claim to the Illinois Department of Employment Security, based on a security recording of the incident, and was later granted unemployment.

47. Thomas believes he was targeted for wrongful termination, as a result of previously filing a charge of discrimination with the EEOC. He also believes his wrongful termination is based on filing numerous formal complaints of racial descrimination with management.

Mitigation of Damages and Resulting Stress

48. Due to the Company's wrongful termination, Thomas has been out of work from December 2018 through the present. Not only has the Company's actions impeded Thomas' ability to recover lost wages and provide for his family, but also this has impeded his ability to seek new employment.

49. Thomas has applied for a variety of similarly situated positions via LinkedIn, Indeed, and in-person through friends and co-workers. Thomas spends approximately forty (40) hours per week actively seeking employment.[2] However, as of the date of this filing, said employment has not materialized.

50. Thomas has applied for, and is actively denied, unemployment because of Company's contest.

51. Thomas' health has been impacted in his ability to get back to a "normal way of life" following his traumatic surgery. Now he is very anxious and worried about his work prospects and possibilities due to health and age.

52. As a direct result of the stress incurred from Company's termination, Thomas is taking prescribed medication back problems exacerbated by this stress and anxiety. He is also seeing a therapist on a weekly basis to deal with the stress from not being able to provide for his family.[3]

53. Thomas is currently doing his best to mitigate his damages by looking for both part-time and full-time work.

---

[2] Specifics regarding Thomas' mitigation of damages will be provided to Employer counsel promptly upon issuance of written discovery.
[3] Clarification of emotional damages will be provided to Employer counsel promptly upon issuance of written discovery.

## COUNT I
### RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq* BASED ON RACE AND COLOR (against Seal-Rite Door, Inc.)

54. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53, as if fully set forth herein.

55. Defendant has unlawfully discriminated against the Plaintiff based on his race (African-American), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 *et seq.*

56. Plaintiff is protected against employer discrimination based on his race (Africa-American).

57. Defendant treated Plaintiff less favorably than similarly situated employees who are not of African-American race.

58. Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of being targeted for racial descrimination against his race (African-American), in violation of Title VII.

59. Similarly situated non-African-American employees, who have similar job duties and work experience, were not terminated.

60. The Defendant's conduct as alleged above and Defendant's termination of Plaintiff constitutes unlawful discrimination based on race in violation of Title VII. The state reasons for the Defendant's conduct were not the true reasons for Plaintiff's termination, but instead were pretextual to hide the Defendant's discriminatory *animus.*

61. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices.

## COUNT II
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq* BASED ON HARASSMENT (against Seal-Rite Door, Inc.).

62. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53, as if fully set forth herein.

63. The actions of Defendant as perpetrated by its agents and as described and complained of above are unlawful employment practices in that they have the effect of discriminating against and creating a hostile work environment through discrimination including but not limited to skin color and race, in violation of Title VII.

64. At all times relevant to this cause of action, Defendant had a duty under Title VII to refrain from discriminating against, harassing, retaliating against, and permitting a hostile work environment for Plaintiff based on his skin color and race.

65. Plaintiff was harassed on an almost daily basis by the Supervisor.

66. Plaintiff reported the harassment on multiple occasions to the Supervisor and Company management. Despite this, Defendant did not take any action to investigate, remediate, stop, prevent, or otherwise address the hostile work environment.

67. Defendant's inaction caused the hostile work environment to continually escalate, eventually leading to Plaintiff's severe emotional distress.

68. The hostile work environment Plaintiff was subjected to was so humiliating and derogatory that it unreasonably interfered with his work performance, altered the conditions of his employment, and prevented the recovery of his work related injuries.

69. The discriminatory actions by Defendant, through its management agents and employees, were intentional and willful, and in deliberate disregard of, and with reckless

Case: 1:19-cv-04045 Document #: 1 Filed: 06/17/19 Page 14 of 18 PageID #:14

indifference to, the federal laws, state laws, and the rights and sensibilities of Plaintiff.

70. Defendant, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

71. There is a connection between the Plaintiff's skin color, race, and the dissimilar treatment suffered by Plaintiff at the hands of Defendant.

72. Based on the racial discrimination, hostile and abusive work environment, Plaintiff filed a formal discrimination complaint, which resulted in ratilation on behalf of the Defendant.

73. The discriminatory actions by Defendant were intentional and willful, and in deliberate disregard of, and with reckless indifference to, the federal laws, state laws, and the rights and sensibilities of Plaintiff.

74. The actions of Defendant against Plaintiff caused him great mental anguish, humiliation, degradation, emotional and physical pain and suffering, loss of professional reputation, lost wages and benefits, future pecuniary losses, and other consequential damages

# COUNT III
## RETALIATION FOR EXERCISE OF RIGHTS UNDER TITLE VII CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq* (against Seal-Rite Door, Inc.).

75. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53, as if fully set forth herein.

76. As herein alleged, the Defendant, by and through its officers, managing agents and/or its Supervisors, illegally retaliated against Plaintiff by terminating his employment on the basis of his having opposed unlawful practices and reporting race and color discrimination. Defendant had no legitimate reasons for any such act, which is in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 *et seq*.

77. On at least one occasion beginning on or about October 9, 2017, Plaintiff engaged in protective activities when he reported to Company management that Plaintiff had been a target of racial descrimination and mockery on behalf of a supervisor, based on his race and skin color.

78. After his report to the Defendant, Plaintiff received a wrongful termination from employment by Defendant on or about December 11, 2018.

79. The wrongful termination was in retaliation for Plaintiff's engaging in protected activities.

80. Plaintiff was wrongfully terminated for pretextual reasons for opposing unlawful discrimination based on his race and skin color, after previously filing a charge of descrimination with the Equal Employment Opportunity Commision.

81. The adverse actions following his involvement in a protected activity within such a period of time raises an inference of retaliatory motivation.

82. As a result, Plaintiff was denied the adequate amount of time necessary to recover

from work related injuries.

83. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices.

**PRAYER FOR RELIEF**

As a proximate result of the foregoing facts, Plaintiff has suffered loss of past and future wages and bonuses, the value of lost past and future benefits, incidental damages, and pain and suffering in the form of emotional and physical distress, anxiety, inconvenience, loss of enjoyment of life, loss of status and self-esteem.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A. Grant Plaintiff a permanent injunction enjoining Defendant Seal-Rite Door, Inc. and its agents, successors, employees, attorneys, and those acting in concert with the Defendant and at Defendant's request, from continuing to violate Title VII;

B. Grant Plaintiff compensatory damages, including damages for emotional distress, in an amount to be determined at trial;

C. Grant Plaintiff all lost wages, past and future, to which he is entitled;

D. Grant Plaintiff punitive damages in an amount to be determined at trial; and

E. Grant Plaintiff such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, medical bills, attorneys' fees, and interest.

| | |
|---|---|
| Cole Sadkin, LLC<br>Mason S. Cole<br>20 South Clark Street, Suite 500<br>Chicago, Illinois 60603<br>colesadkin.com<br>(312) 548-8610<br>mcole@colesadkin.com<br>Firm ID: 49001<br>*Counsel for Plaintiff* | Respectfully submitted<br><br>Danin Thomas<br><br><br>By: /s/ Mason S. Cole<br>**One of his Attorneys**<br>**Mason S. Cole, Esq.** |

## DEMAND FOR TRIAL BY JURY

Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Dated: June 17, 2019					Respectfully submitted,

								Danin Thomas


								By: /s/ Mason S. Cole
								**One of his Attorneys**
								**Mason S. Cole, Esq.**

Cole Sadkin, LLC.
Mason S. Cole
20 South Clark Street, Suite 500
Chicago, Illinois 60603
colesadkin.com
(312) 548-8610
mcole@colesadkin.com
Firm ID: 49001
*Counsel for Plaintiff*